Please be seated. Thank you. Our first case of the afternoon is Fletcher v. McDonald et al. For the appellant, it's Mr. Duffy, is that correct? And for the appellee, Ms. Janssen? Okay, you may proceed. Please the court, opposing counsel, my name is Paul Duffy. I'm the attorney for the appellant, Dr. David J. Fletcher. This case seeks reversal of the trial court's granted summary judgments on behalf of the defendants Ward McDonald, Tom Lockman, and the law firm Meyer Cable, P.C. Just by way of background, I'll try to summarize, but the underlying cases are somewhat complex. The original case that Dr. Fletcher filed against the defendants here was for legal malpractice and professional negligence in connection with their representation of Dr. Fletcher in a matter arising from a property-related dispute, which I'll call the Woodbine litigation. It relates to the Woodbine subdivision development outside of Mount Zion, Illinois. Dr. Fletcher was a developer of that property, and in connection with the developing and subdividing, it ran into legal issues for which he retained the defendant law firm and the two individual defendant attorneys in approximately October 2008. In or about October 2008, the Woodbine Homeowners Association filed a lawsuit against Dr. Fletcher as a developer. Initially, it was a one-count complaint seeking specific performance. The only thing they were seeking initially was the transfer of a certain common area to the Homeowners Association that Dr. Fletcher still held title to. During the course of the defendant's representation of Dr. Fletcher, they never filed an appearance, they never filed an answer to the complaint, or they never moved to dismiss the complaint. And the litigation spiraled exponentially after it was first filed from the one-count complaint for specific performance, and this eventually spiraled to three or four, I believe four, amended complaints that were finally dismissed with prejudice. The last complaint was dismissed with prejudice in June or July of 2010. However, Dr. Fletcher brings this up afterwards in February 2011. Dr. Fletcher, initially proceeding pro se, filed a complaint for legal malpractice against his attorneys, who are the Department of the Appellees here. The attorneys represented Dr. Fletcher from October of 2008 through approximately February 2009. And basically, the complaint was in two counts. However, in the complaint, he alleged that the defendants owed him several duties in connection with their role as attorneys for him, and that they breached each of those duties, and he suffered damages and sought to recover damages as a result. The defendants, I believe in late 2011, filed a summary judgment in the trial court on April 2, 2011, granted summary judgment in connection with the claims against the defendants. Dr. Fletcher seeks reversal of that ruling on two primary grounds. First, the trial court's decision on the matter was clearly erroneous. The sole reason that the court gave in its April 2, 2012 order granting summary judgment was relating to an affidavit that one of the defendants provided to the plaintiff in the Woodbine litigation. To back up further, after Dr. Fletcher and the defendants and the appellees terminated their attorney-client relationship some eight months after, one of the defendants, Tom McDonald, volunteered an affidavit to the plaintiffs in the Woodbine case, in which he was formerly representing Dr. Fletcher. He offered an affidavit to assist the plaintiffs in trying to obtain documents that Dr. Fletcher believed and was told, he states in his affidavit that he was told by... You say he volunteered the affidavit? Yes. Mr. McDonald, apparently pursuant to an informal request from the Woodbine plaintiffs, that he provide assistance in trying... Dr. Fletcher had asserted attorney-client privilege with respect to certain communications. The Woodbine attorneys contacted, by their own admission, contacted Mr. McDonald and asked for his assistance in allowing plaintiffs to obtain the communications that Dr. Fletcher had, for which Dr. Fletcher had asserted privilege. And Mr. McDonald volunteered an affidavit that he provided to the Woodbine plaintiffs' attorneys stating, basically undermining Dr. Fletcher's claim that they were privileged. There were some communications between Dr. Fletcher, the defendant lawyers, and Dr. Fletcher's sister, each of whom, Dr. Fletcher and his sister were both represented by the defendants, and so forth. But the affidavit made the claim that Mark Cable and Mr. McDonald did not believe that those should be privileged communications. Dr. Fletcher, in the summary judgment affidavit he provided, stated that he was told by the defendants that they were privileged communications. First of all, that he considered them to be privileged communications because they were for purposes of obtaining, seeking and obtaining legal advice, and so forth. Mr. McDonald, despite that, despite his continued, he had withdrawn from the case despite his continued obligation of loyalty to Dr. Fletcher, volunteered to assist the plaintiff in obtaining those privileged communications to assist the plaintiff in the same litigation in which they had represented Dr. Fletcher. The trial court focused erroneously, we believe, on that as the sole issue in the complaint. The trial court indicated, based upon his review of that affidavit, stated that that affidavit did not contain attorney-client communications, and therefore Mr. McDonald had not given privileged communications to the plaintiff in the Woodbine case. But that totally misses the issue. That was not something that Dr. Fletcher alleged in this complaint. He did not allege that that affidavit contained communications. He said his allegation was that the defendants violated their duty of loyalty and their duties as an attorney to his client by undermining Dr. Fletcher's attempt to assert a privilege and to assert the confidentiality of documents. There was nothing in the complaint alleging that the four corners of that affidavit contained attorney-client communications. Yet the trial court ruled that, upon evaluating the affidavit, said it did not include privileged communications. As a result, the trial court held that because that was the only basis upon which Dr. Fletcher alleged breach of fiduciary duty and breach of the attorney-client relationship, that he made a summary judgment with respect to the entire case. In doing so, there were two levels of errors. First of all, Dr. Fletcher never alleged that that communication contained privilege. He said that the breach was the defendants assisting a former party opponent of theirs in the same litigation in trying to obtain confidential and privileged information communications from Dr. Fletcher. And secondly, the court erred when it said that that was the only duty that Dr. Fletcher alleged in his complaint that was violated. In fact, in Dr. Fletcher's complaint, he asserted five different duties that the defendants owed him by virtue of the attorney-client relationship that they had. The first was that they had, this is alleged primarily in paragraphs 35 and 36 and 37 and 38 of Dr. Fletcher's complaint, that the defendants owed him a duty to provide informed understanding of his legal rights, obligations, and the consequences of certain legal strategies which they breached. He alleged that they owed him a duty to zealously represent him. He said they had a duty to negotiate with those that were advantageous to him. He alleged that they had a duty to act in his best interest at all times, which they breached, and he said he had a duty to protect confidential information. Now, Mr. Duffy, you insert the word breach after you read or recited from the complaint these allegations of duty. Are there allegations of breach in the complaint as well? Dr. Fletcher alleged that there was a breach in the complaint. There was a breach. That there were breaches of all of those duties. Well. The defendant answered the complaint and then subsequently moved for summary judgment. In opposition to the summary judgment, Dr. Fletcher produced a factual affidavit providing a factual basis for all of his allegations of the breach of those duties. He submitted that allegation in opposition to the defendant's motion for summary judgment. It was very detailed, very factually specific, and he alleged facts. I want to make sure that I understand what you're saying here today. There are two counts to the complaint. One is legal malpractice, that's count one, and the second one is entitled breach of fiduciary duties. In count one, the breach is identified in paragraph 36 as the decision to submit an affidavit adverse to Dr. Fletcher's interest. There's also this catch-all, by among other things, in there as well. But nothing is specified beyond the affidavit. In count two, the breach is defined in paragraph 40 as the decision, again, to submit an affidavit adverse to Dr. Fletcher's interest. And here again, the words by among other things are thrown in as well, but not specified. Are you suggesting that an affidavit submitted in supplement to summary judgment of pleadings suffice as a complaint, as a pleading, identifying the actual breaches? Well, first of all, in the preliminary paragraphs that are incorporated by reference in each count, it states the specific duties that Dr. Fletcher owed. You're correct, those are the allegations of the breach that are in the complaint. The defendant's answer didn't contest the sufficiency of those through a motion to dismiss, or likewise. They did answer the complaint, and the factual information Dr. Fletcher provided was through an affidavit that he presented, a non-rebutted affidavit, by the way, that he presented in opposition to the motion for summary judgment, providing the factual basis for the breaches that he alleged in the complaint. All right, I'll just ask you this. Do you believe an affidavit frames the issues, or the complaint frames the issues? The complaint frames the issues, and the affidavit that Dr. Fletcher submitted were within the framework of those set forth in the complaint, with respect to the individual five different duties for which he claimed it was a breach, by among other things, assisting the defendant's former party opponent in invading the attorney-compliant privilege on behalf of Dr. Fletcher. Was there ever a request by plaintiff to amend pleadings to allow for these allegations of breach that are suggested in the affidavit? There was not. The defendant filed an answer to the complaint and a counterclaim, and then shortly thereafter filed a summary judgment motion. So Dr. Fletcher presented the evidence through an affidavit in opposition to the summary judgment motion. But I do believe the complaint does absolutely frame the issues. The affidavit that Dr. Fletcher produced fits. Well, there is no prohibition seeking leave to file an amended complaint even after a summary judgment motion has been filed, is there? There is not, no. Our argument is that the defendant's admitted the sufficiency of the complaint by answering it, and that the affidavit does fit within the framework. Dr. Fletcher initially filed this pro se, but it does fit within the framework of the allegations that are contained in the complaint. And we believe the trial court erred when it held that the only breach of duty was with respect to the breach of the attorney-client privilege, and that because the affidavit itself contained privileged communications, that there was no breach. That was erroneous, as I said, for two reasons. First, that was not an allegation in the complaint. The complaint didn't allege that they actually contained attorney-client communications. It said that Dr. Fletcher's attorney assisted his then current party opponent in trying to obtain information and spurred a lot of litigation costs that Dr. Fletcher had to fight his own former attorneys who were volunteering to help the plaintiff invade his attorney-client privilege. And secondly, the breach of the attorney-client privilege is not the only duty that Dr. Fletcher pledged. That clearly is in the complaint. He pled five different duties that the defendants owed to them that the court not only didn't reach, but didn't even acknowledge. It indicated that the only issue was the attorney-client privileged communication and because that affidavit didn't contain those communications, he granted a summary judgment as to both causes of action. So we're asking the court to reverse and remand that decision to the court for purposes of longer litigation to continue because the court didn't address the vast majority of the duties that were alleged in the complaint. Furthermore, Dr. Fletcher's affidavit did provide a factual support for all the individual duties that he claimed that were breached. It indicated that the duty to provide informed information and legal advice to him were breached by the defendant. This case was initially a one-count specific performance case in which the plaintiff was asking Dr. Fletcher to convey the property. Dr. Fletcher, as he said in his affidavit, hired this firm specifically to convey the property and when the complaint was filed, he stood ready, willing, and able to transfer it. His attorneys never advised him that he could just simply do what he had already asked him to do and what he was prepared to do and end the then current litigation. That was Dr. Fletcher's last best effort to try to settle the litigation which Derek had spun out of control and took another year and a half to finally dispose of and cost Dr. Fletcher tens of thousands of dollars to defend. There was an easy out at the beginning and his attorneys failed to advise him of that and to provide him representation in connection with that. The attorneys frankly never even filed an appearance or even filed an answer despite representing him throughout, I believe, three to four months of ongoing litigation. Also, Dr. Fletcher alleged that the defendant's affidavit provided factual support and that the defendants violated their duty to tell him about, properly advise him because he learned after they stopped representing him that there was a Liz Pendence action that was filed against the property. An improper Liz Pendence notice in Dr. Fletcher's opinion because the underlying case didn't involve a question about the ownership of this property. But he obtained information afterwards that Mayor Cable received a notice that there was a Liz Pendence filed against Dr. Fletcher's property at Woodbine. They never advised him of this and the whole time that the Liz Pendence notice was there he was attempting to sell his property. It was like a dramatically falling real estate market and had he known if his attorneys informed him that this notice had been placed against his property as they had received notice of it, he could have done something and possibly been able to sell the property. As a consequence of that, he was not able to sell the property that he was then marketing at the Woodbine subdivision. He alleged that they had a duty to zealously represent him. They did. They never appeared for him. They never did really anything other than they billed him $50,000 but they never filed anything in court or moved to dismiss some of the amended complaints or gave Dr. Fletcher advice as to how he could terminate the litigation quickly. As a consequence of that breach, he suffered monetary damages in terms of the ensuing litigation that then spiraled out of control and cost him tens of thousands of dollars, as I mentioned. And the fact that the litigation continued for a substantial amount of time as he says in his affidavit, has directly harmed his ability to sell his property. So he's provided factual support for breach of that duty on the part of defendants. He alleged in his complaint that the defendants owed a duty to negotiate a favorable settlement in connection with the then pending litigation. In his factual affidavit, Dr. Fletcher said that they not only didn't negotiate in his best interest, they negotiated against his interest. His own lawyers met with the Woodbine plaintiffs at the Woodbine property and made a unilateral offer to convey certain of Dr. Fletcher's property to the plaintiffs on the settlement offer. That offer was not authorized by Dr. Fletcher. He didn't know about that offer when it was made. And he never agreed to convey that property. Yet from that point on, until the litigation was terminated, the defendants used that as a starting point for any settlement negotiation. That offer by itself prevented any meaningful settlement from proceeding because the starting point was always the conveyance of this property that Dr. Fletcher never gave authority for his lawyers to offer to convey and never intended to convey. So that had the practical effect of precluding any settlement offers and caused Dr. Fletcher financial damages as a result. Finally, the last two duties that Dr. Fletcher alleged were that the defendants failed to act in his best interest and failed to protect confidential information. Voluntarily, and this is not disputed, the defendants voluntarily provided an affidavit to the former party opponents in order to assist them in invading Dr. Fletcher's confidences for what he thought were told were privileged information in connection with the litigation. And again, the defendants... What were those exactly? I'm sorry? What were those exactly? There were communications between Dr. Fletcher and... Meyer Capel represented both Dr. Fletcher and his sister and there were communications between Dr. Fletcher, to and from Dr. Fletcher and the defendants on which his sister, also a client of Meyer Capel, were copied. And the plaintiff in the Woodbine case was alleging that because another Meyer Capel client was copied on those with some type of a waiver of the privilege. Dr. Fletcher in his affidavit said that Meyer Capel told him at the time he made those communications that because it was a joint representation, they were considered privileged and that they would hold them out to be privileged. After the representation terminated, the defendants, as Dr. Fletcher states in his affidavit, they changed courses and said, all of a sudden, no, these communications are not privileged, let me help you try to get them. And drafted an affidavit backtracking on what they told Dr. Fletcher saying that the documents should not be considered privileged and so forth. The plaintiffs in the Woodbine litigation used that to support their motion to try to obtain privileged communications to assist their case. The court in the underlying action in Macon County denied the motion, found that the privilege did exist and did protect them from disclosure if there were parties under the attorney-client privilege. But the defendants nevertheless tried to assist the plaintiffs in invading confidence in some privileges with respect to communications that Dr. Fletcher had in the same litigation, again, in which they originally represented Dr. Fletcher. Your time is up. You'll have additional time in rebuttal. Thank you. Ms. Jansen. Good afternoon. May it please the court, counsel. My name is Kim Jansen. I am here today on behalf of the defendants Ward McDonald, Thomas Lockman, and Meyer Papel. I did want to take just a quick second at the outset of this argument to touch on the question of jurisdiction just to make sure the court is comfortable. I know there were some questions raised in the brief, some confusion perhaps. There is no question in my mind as far as this court's jurisdiction. It's proper under 304A, the July 24th order entered a very clear 304A finding that there is no just cause to delay appeal. In that same order, the trial judge recognized that the pending counterclaim of the defendants seeking legal fees did remain pending, so that prevented it from being finalized to all parties. 304A language was in fact required. It was granted, and then the notice of appeal was timely filed within 30 days of that. I think there was some confusion in my review of the briefs coming in today, so I wanted to make sure the court was clear on those facts. Turning to the merits of the summary judgment, I will start as well with the question of the affidavit provided by Mr. McDonald, which is where the trial court began and ended its analysis. A number of representations were made in counsel's argument regarding this affidavit that I don't think are borne out by the record. For example, the representation that Mr. McDonald volunteered the affidavit. I think language was used like, let me help you try to get these privileged documents. That's not supported by, certainly not by the complaint as the affidavit of Chris Ellis, the counsel for the Homeowners Association in the underlying Woodbine litigation. Spells out exactly how this affidavit came to be. Plaintiff had made a claim of privilege in the Woodbine litigation, which is of course his right to do. The Homeowners Association wanted to oppose that claim of privilege, which of course is its right to do. Part of that claim of privilege as counsel has represented, rested on the contention that Sally Fletcher was a client of the firm and that Tyrone Thomas was employed by the firm or somehow an agent of the Meyer Cable firm. The Homeowners Association, through its attorney Chris Ellis, contacted Mr. McDonald, sought information on whether in fact these representations were true. Mr. Ellis represents in his affidavit that Mr. McDonald was not forthcoming, was not voluntarily cooperating with this attempt to acquire information. But Mr. Ellis made it clear that, hey look, I've got this claim of privilege before me in this litigation. I have a right to respond to these facts. You can either answer these questions in an affidavit or I can subpoena you for a deposition or subpoena you to testify at the hearing on the privilege issue in the Woodbine litigation. At that point, Mr. McDonald provided a very, very narrow discreet affidavit representing he did not take a position that plaintiff was not entitled to in the Woodbine litigation, didn't take a position in that litigation whatsoever. Simply asserted two very narrow discreet facts. One, that in his opinion the Meyer Cable firm did not represent Sally Fletcher and that to his knowledge the Meyer Cable firm never employed Tyrone Thompson. Neither one of those narrow, discreet, limited facts were confidential or privileged and I think counsel has conceded that much. He suggested that providing those facts was somehow a breach of defendant's duty of loyalty to plaintiff, its former client. He hasn't provided any support for the point that that's somehow a breach of the duty of loyalty simply providing Counsel, before you leave the issue of volunteering whether the affidavit was provided voluntarily let me ask you, could Ellis have compelled McDonald to testify? I certainly can see no reason why he could not have. He could have subpoenaed McDonald or Lachman either to testify or to appear for a deposition. At that point, plaintiff would have had to assert a privilege. Plaintiff could have of course argued no, no, no, you're asking questions that are subject to the attorney-client privilege. I don't want these guys answering that. Plaintiff has conceded that these two facts the two facts that were disclosed and elicited that wasn't privileged information that wasn't confidential information I am aware of and plaintiff has not argued any basis that would have impaired or impeded or prevented the disclosure of those two very limited facts. It's my belief and I see no reason to believe otherwise that Ellis could have compelled the production of those facts whether by testimony or affidavit or deposition. Based on that and based on the fact that Chris Ellis also made it very clear that he had every intent to do everything he needed to defend against this assertion of privilege the fact that even if we took the position, even if arguendo, Mr. McDonald should have waited for a subpoena instead of providing the affidavit. That information those two very limited facts were going to be disclosed one way or another anyway. The fact that he provided the affidavit caused no damage caused no harm to plaintiff in the litigation. He was going to have to one way or another litigate the question of whether or not Sally Fletcher was a client of Mayer Cable and whether or not Tyrone Thomas was employed by that firm. That was going to be part of that litigation anyway and as he has also acknowledged, he won the issue in the litigation. He didn't lose anything. These two facts were presented they litigated it. He won. So there's no damage resulting from the fact that Mr. McDonald admitted two truthful facts. I think unless this court has further questions regarding the affidavit issue I think that the trial court's judgment on that point was spot on. Plaintiff has not presented any disputed facts that are material to this question that would defeat summary judgment. I think summary judgment was appropriate on that. With respect to these other things among other things that plaintiff would like to argue in the alternative I think this court has recognized as well that you can't defend against summary judgment by presenting evidence of other things that weren't pleaded in the complaint. Pleading a list of generic duties is not the same thing as pleading specific facts and of course in Illinois we are required to plead specific facts. It's a fact pleading state. None of these other things that the plaintiff now would like to rely on is ever alleged factually in his complaint. So I think that the trial judge was also correct in declining to consider those other things at all and granting summary judgment solely based on the issues as framed by the complaint. Even if this court were to accept the idea that somehow among other things was enough to bring in the universe of other conceivable facts, the argument that plaintiff has put forth and the evidence in his affidavit are not sufficient to defeat a summary judgment even as to these other claims that he came up with after the fact. Kind of grouping some of these together he talks about the fact that Bachman and McDonald did not file any answer or motion to dismiss in the underlying would find litigation. Let's look at the time frame and I think it's a lot clearer why that is the case. If over the course of a year and a half they hadn't filed any sort of motion to dismiss or answer or anything like that, that might be a different case. But what we have here the complaint was filed October 20th, 2008. McDonald, Bachman, Meyer, Capel were hired a short time after that. The complaint was served on November 5th 2008. Within three weeks of that the Homeowners Association in the would find litigation filed a proposed amended complaint in that litigation. Leaf to file that complaint was not granted so that complaint did not actually become a proper complaint until March 16th. March 16th, of course, is almost a full month after Meyer, Capel withdrew as counsel in February 24th, 2009. It would have made no sense at the time that Meyer, Capel withdrew or prior to that to answer the initial complaint when the Homeowners Association had already filed and sought Leaf to file a proposed amended complaint. Answering a complaint that was likely to be superseded by an amended complaint and moving to dismiss a complaint that was likely to be superseded by an amended complaint would have really just been a waste of everybody's time and perhaps wouldn't even have been considered by the court. In addition, Plaintiff argues that the defendant should have advised him that he could have made all of this go away by just simply transferring the common areas to the Homeowners Association. But of course he did transfer the common areas to the Homeowners Association and that did not make this entire litigation go away. It continued well after he transferred that portion of the property because there were other disputes at issue in that litigation. His position seems to be as argued in the reply briefing as argued before the court today that it would have made everything go away because at the time the initial complaint was filed, transfer of those common areas was the only issue. But again, simply because they would have transferred the common areas even if he's correct, even if that was the only relief sought in the original complaint, within three weeks after the initial complaint was served, the Homeowners Association had already sought leave to amend their complaint to add a whole bunch of additional claims and clauses. There's no reason to think that simply if the defendants had swooped in and gotten this transfer in within that three week frame before the proposed amended complaint that they would have just abandoned all these other claims that they sought to assert. There's no evidence, there's no allegation, nothing in the record to support that speculation. I think the fact that the case continued for a good year after the common areas were transferred contradicts any claim that transferring the common areas was ever going to make this whole thing go away. On the question of the lease pendants filing, plaintiff's counsel argued today that it was an improper lease pendants, certainly not alleged in the complaint, certainly not supported by plaintiff's affidavit, and I haven't seen anything in the briefs that would explain why the lease pendants was improper, what was wrong with it. He hasn't argued that other than to raise it for the first time today. There's no reason to believe the lease pendants wasn't proper. He also made some argument today that he was damaged by the lease pendants because he was attempting to sell his property at the time and somehow this prevented him from selling his property or impaired Again, that's not in the complaint, that's not in his affidavit, that's not in his briefs. It's the first time I'm hearing that he was trying to sell his property and somehow was prevented by a routine lease pendants filing. So, I don't think that claim is supported by anything in the record. And finally, and I'm going to group these two together, the unauthorized settlement offer and disclosure of privileged communications, both of which seem to be premise on this idea that the Meyer Cable defendants had no authority to convey to the homeowners Association this idea that plaintiff and Sally Fletcher had agreed that plaintiff could convey certain lots of the property back to Sally Fletcher because that was one of the issues, one of the problems in the underlying litigation. First problem with that is that March 24th, 2011, plaintiff was served with a request to admit. In that request to admit, he was asked to admit that he instructed Meyer Cable to convey to the HOA's counsel, Mr. Ellis, that plaintiff and Sally had decided to reverse the transfer of the 12 lots. He didn't answer the request to admit until August 31st, 2011. By virtue of the Supreme Court rule, he admitted that. He had 28 days to deny or object to the request to admit. He did not do so. By operation of Rule 216, he has admitted that he did in fact instruct Meyer Cable to convey that information. The plaintiff subsequently then objected to the attempt to denial and that it was untimely. Did you ever get a ruling on that objection? We never did, no. You say it's by operation of law, yet you filed an objection. Why did you do that? Certainly, I think it's always for our benefit to make sure there's something on record demonstrating that the request to admit was untimely. But Rule 216 doesn't depend on whether a motion is filed. It doesn't depend on a ruling of the court. It's by operation of the rule requests that are not properly responded to are deemed to be admitted. So by function of the rule it's automatically deemed admitted. You don't have to file a separate motion on that. But even if that weren't admitted and even if Meyer Cable had no authorization to convey this information, plaintiff still has not alleged any facts to demonstrate that he was in any way damaged by the communication of this potential settlement posture. He makes broad conclusions that after that the HOA was just unwilling to consider anything less. Well, there's no suggestion that before that the HOA was ever willing to consider anything less. There's no suggestion that but for this communication the HOA ever would have considered anything less. Chris Ellis, the attorney for the HOA, said in his affidavit that nothing that Meyer Cable did had any effect on the course of the litigation in the Woodbine matter. It was going to be as complicated and messy and antagonistic as it was no matter what Meyer Cable did in that brief period that it was counsel of record. Unless the court has any further questions, I would simply ask that the judgment of the trial court be affirmed. I don't believe I see any. Thank you very much. Duffy, we vote. Five minutes. Thank you, Your Honor. First of all, just with respect to this request to admit issue, there was the rule, as the court is well aware, was 28 days from service and there was a dispute about whether Dr. Fletcher was properly served with requests to admit fact that were served when he was still proceeding pro se. Dr. Fletcher disputed that he was ever served with them and when counsel subsequently resubmitted them and said, these were the answers to these that I formed with that dispute and counsel filed a motion to deem the facts admitted based upon that but they never noticed it for hearing and never had it heard by the court. Our position was that we did answer those and deny the specific one that counsel referred to within 28 days of when they were served several months after counsel indicated that he had served Dr. Fletcher when he was proceeding pro se. That matter wasn't an issue and that was not a basis for the summary judgment motion that was not something that was raised until their response brief in connection with this appeal. In terms of the McDonald affidavit, I think there's no question that counsel didn't point to anything in the complaint saying that Dr. Fletcher alleged that the affidavit Ward-McDonald provided disclosed confidential privileged communications. That's not an allegation in the complaint nor is it something Dr. Fletcher indicated in his affidavit response to summary judgment. Counsel's correct that there were two facts disclosed in that affidavit. The purpose of disclosing those two facts were to show to the plaintiffs that this is the way you get around the objection of privilege. Mr. McDonald said that this individual, Ms. Fletcher, was not a client of the firm so you should go ahead and be able to get The implication was that that should be removed as a basis for asserting a privilege because it was disclosed to a third party being Sally Fletcher. Dr. Fletcher said in his affidavit and in response to summary judgment as we noted in our brief, Sally Fletcher herself indicated she believed that she was being represented by Meyer Cable in connection with this matter. She was a Meyer Cable client and the court in Macon County when ruling on the issue ruled after an evidentiary hearing that she was a client of Meyer Cable. The only reason that affidavit existed in the first place was to assist the plaintiffs in getting communications that Dr. Fletcher was for which he was asserting an attorney-client privilege and I think counsel acknowledges that that was voluntary. He did offer that affidavit. It's possible it could have been subpoenaed and we could have raised an objection at the deposition in connection with what Mr. McDonald answered but he never waited for that point. He did volunteer and he wasn't under anything compelling him to show up and provide information detrimental to his client and helpful to the party opponent in the same litigation in which he represented him. In terms of counsel spent a substantial amount of time with factual argument with respect to the statements in Dr. Fletcher's affidavit. I think that highlights the fact that there are genuine issues of material factor. They had an opportunity to present a counter affidavit.  Dr. Fletcher's affidavit was in response to their motion for summary judgment. They had a full and fair opportunity to present a counter affidavit if they wanted to rebut the allegations in Dr. Fletcher's affidavit on summary judgment. They chose not to. They were attempting for the first time to argue these facts on appeal but when it was before the trial court there was no opportunity. They decided not to take the opportunity to present a contrary affidavit in connection with it. I guess finally in terms of opposing counsel's conclusion that Dr. Fletcher didn't suffer damage in connection with this case I submit that that's purely speculation. This attorney in connection with that case filed four versions of the complaint each of which was dismissed. Finally the judge after growing tired of dismissing the complaint and giving leave to amend it came to the conclusion that they were not able to amend it to have a proper pleading and dismissed it the last time he dismissed it was with prejudice and it ended there. Those are the counsel's conclusions as to the impact of Meyer Cable's conduct in connection with his four failed complaints is hardly a relevant or frankly persuasive factor in concluding whether Dr. Fletcher suffered damages. Thank you counsel. We'll take this matter under advisement and stand in recess until the readiness of the next case.